Good afternoon, ladies and gentlemen. The remaining case for argument today is Wesley v. Pfister. Mr. Van Dam. Thank you, Your Honor, and may it please the Court, Jeff Van Dam for the petitioner, Andrew Wesley. The Illinois Appellate Court made at least two fundamental errors in rejecting Mr. Wesley's ineffective assistance claim on post-conviction review. The first error was that it unreasonably applied Strickland in determining that the actions, or inaction in this case, of trial counsel regarding a potential juror fell within the realm of reasonable trial strategy. Second, it unreasonably determined the facts when it decided that the juror, Keisha A., was not biased based only on isolated statements from the record. First, as to the Strickland point, the Court found that Mr. Wesley did not show his counsel's failure to excuse Keisha A. was unreasonable performance, but it was unreasonable. To date, no court or opposing counsel has posited a reasonable explanation for counsel's failure not to peremptorily strike Keisha A. Her responses to voir dire questions started and ended with statements demonstrating her bias. She first told the trial court that her relative's murder bothered her to the extent that she could not be fair or impartial. Then she backtracked, telling the court she could be impartial. Yet then, under questioning by trial counsel, she reversed course again. She told trial counsel she could not be sure she could set aside her past experience and judge the case on the facts and the law. And trial counsel unsuccessfully attempted to remove her for cause. There's undisputed evidence in the record that his client asked him to use a peremptory strike against Keisha A., and he did not. He had five available. He used one, and that was the end of it. Nothing in the record explains his failure. Nothing about Keisha A.'s stated background under the court's questioning or answers to other questions from counsel justifies it. Is there any indication, Mr. Van Dam, that counsel knew who would fill the spot if he exercised a strike? There isn't, Your Honor. There was another brief section of voir dire after the one in which he attempted to strike Keisha A. for cause and then did not peremptorily strike her. To fill in the 12th seat in the alternates, but no indication of this judge's method. There isn't much. There's a brief period of questioning from the judge for each juror, the standard questions, what do you read, that sort of thing. Then there's follow-up questioning by counsel. And in that follow-up questioning by counsel in this case, counsel asked Keisha A., he asked her to revisit what happened to her close relative. She said a sort of brother of hers who had been murdered, I think, 10 years prior. She said that she attended the trial, that she was satisfied with the outcome of the trial, and at the end of his questioning, counsel asked Keisha A., is there anything about that experience such that you would not be able to set it aside? Now, the respondent says he asked a compound question that was confusing at the end of that questioning. But right afterward, he asked her plainly, could you set it aside or not? And Keisha A. said, I can't be sure. Well, you know when you're saying setting something aside, it means are you going to erase it from your memory? Certainly not, Your Honor. And I don't think that any court has ever set that standard. But this court, in the Thompson case that we cite, specifically used the unable to state that a juror will fairly and impartially decide the case. And we contend that that's the same thing as saying you cannot set aside your past experience. And her first response to the court, her very first question, that bookended the front end of the questioning, was that she could not set it aside and be fair and impartial. So, Mr. Van Dam, on the prejudice prong of this problem, could you show prejudice to Mr. Wesley without showing that this juror should have been excused for cause? I think the prejudice point is an essential part of it. And we contend that the State Appellate Court mishandled that as well. The reason is because instead of unreasonably applying the law, it unreasonably determined the facts of the question. It omitted parts of the questioning that did not fit its conclusion. Well, the problem I guess I have with that is that prospective jurors contradict themselves a lot. And her last answer, I can't be sure, is pretty honest for somebody who has also told the judge that she'll try. Right. And we have the Supreme Court telling us, a patent against Yount is one case that comes to mind, that in essence we defer to the trial judge on the spot to read body language, voice, et cetera, in trying to decide whether to excuse somebody for cause. Right. And this seems, at least your prejudice argument, maybe I'm missing something, but it seems to me to have to meet the same standard. It does have to meet the same standard, but we're also talking about this in the 2254 context. We're looking at the last state court to decide this issue. And in deciding whether she was biased, we have two sentences of analysis from the State Appellate Court, which don't speak to the overall questioning of Keisha A. Now, it doesn't talk about the trial court's finding. It talks about her answers on record. It says it omits the fact, the State Appellate Court omits the fact that she first said, her very first answer regarding her bias was that she could not be fair based on her past experience. The state court instead focused on the judge's subsequent questioning, which elicited a series of one-word answers from Keisha A., can you be fair? Yes. You know this isn't that case. Yes. But it omits the fact also that trial counsel then stood up and asked her a series of other questions that got more detail, brought the past case into her mind perhaps, and elicited the answers at the very end of the questioning, that she could not be sure she could set aside her questioning, or her past experience. That's a very similar case to the one the Sixth Circuit faced in Hughes, which we cite in our brief. A juror said, I don't think I could be fair. The defendant asked counsel to strike the juror. Counsel said yes. Counsel did not do so peremptorily or for cause. The court did not rehabilitate the juror after the juror made this statement, just as in this case, where the court initially spoke to the juror about her biases and said you could be fair, but then after counsel questioned the juror, the court did nothing. In this case, that was the end of the story, our last statement on record from Keisha A. And in Hughes, the Sixth Circuit said that the question of whether to seat a juror who shows bias is not a question of strategy, and we completely agree. What about the class? Obviously, we weren't there, but with all that questioning, there must have been some demonstration of her own demeanor, her own able to articulate certain things, and maybe it sounded, as they listened to her some more, she'd be a pretty good juror, just from her competence, and maybe the next one in or whatnot would not be. And that was Judge Hamilton's question. Well, who would be the next in line that would be, I don't know, say better than she? I don't know anything about, you know, the race or anything else. There's no Batson issue here. I don't know anything about any of that. But just looking at her as a potential juror, obviously, if she really said she didn't want to be there, I guess she could have. Maybe you're saying she did. Well, I appreciate that fact, Judge Mannion, that that's a part of any voir dire process. But in this case, we have a few other facts that are going on. First of all, the court's questioning of her doesn't reveal anything that would make us say whether she'd be a good juror or not. It's very innocuous. What are your activities? Swimming. What do you read? I read The Sun-Times and I watch TV. There's nothing in that that reveals to us that she would be or would not be a good juror for the defense. And because trial counsel had so many peremptory strikes to use, under Illinois law in a joint trial like this he had five to use. He used only one. And in the next set of jurors, which was smaller, he didn't use any. So he had four left to use. And on top of that, he also told his client that he would use a peremptory strike. That's in Mr. Wesley's affidavit that's in the record. And there's nothing reflecting anything to contradict that. So we contend that aside from the normal give and take of voir dire where the judge can evaluate, the lawyer can evaluate, the juror's demeanor, what have you, in this case nobody has posited a reasonable explanation for why you wouldn't use one of those four available peremptories to strike that juror. So what happens if we agree with you, remand for the evidentiary hearing you're seeking, the lawyer's called in to testify about this and he says, I just don't remember. Too long ago. What happens? Well, our primary, we primarily seek the writ of habeas corpus, Your Honor. So, new trial. Exactly right. Because we contend that the placement of Keisha and the jury from the beginning infected the trial of Mr. Wesley ten years ago. If it were remanded for a hearing, we contend that we could ask the lawyer questions, we could elicit more responses about what actually happened, but the solution that really corrects this is a new trial. We'll save the rest of your time for rebuttal. We'll turn to the state. Thank you. Mr. Schneider. May it please the Court. Counsel. Assistant Attorney General Josh Schneider on behalf of the respondents. The state courts reasonably rejected Petitioner's Strickland claim because he could not then and he cannot now establish Strickland prejudice that there was a reasonable probability that had Keisha A. been replaced with some other juror, he would not have been convicted. And not only can he not meet that standard because the case against him was very strong, there were four eyewitnesses of the shooting, three of whom saw him shoot the victim, one of whom saw Mr. Graham gesture to him to shoot the victim, then turned and heard gunshots. But he can't reach the threshold necessary to even reach the point of evaluating the strength of the state's evidence against him, and that threshold is a showing that Keisha A. was, in fact, biased. The state courts found that she was not. That impartiality finding is a credibility determination that's afforded double deference, first as a finding by a trier of fact as to credibility, and then second under 2254E1 as a factual determination by a state court. And it's important when looking at the reasonableness of that credibility determination to really look at what the exchanges were that aroused concern, because there's no question that there's ambiguities in the record. But as the Supreme Court explained in Patent Against Young, it's exactly where there are ambiguities. It's exactly where the record, the cold record, would arouse some cause for concern that it's necessary to defer to the trial court's determination or resolution of those ambiguities. Earlier in the voir dire process, the court was questioning the seventh juror in the 14-juror panel and said, is there anything about this case that would bother you? She had expressed, I believe, on her questionnaire that she was a crime victim herself. And the court mentioned to all of the jurors when he said, well, is there anything about that experience that would prevent you from being fair and impartial? She said, I don't know. I'm not sure. This is on page N79 of the state court record. And the court takes a moment and addresses the entire panel and says, folks, everyone comes here with their life experiences. We don't ask you to ignore the life that you've learned or the common sense or the lessons that you've had in life. What we're asking you to do, however, is to put aside those things that you bring in and only make your decision in this courtroom based on the evidence and the law. If there is something that has that will interfere with that process, then we want to know about it. And this is the important bit. We don't expect you to set aside how you've lived or what your life experience is. We just want to know if you can be fair and impartial. So the court tells them, we don't expect you to set aside your life experiences. We just want you to be fair and impartial. And then subsequently, when the court is questioning Keisha A., the court says, is there anything about this type of cases, presumably murder cases, that so bothers you that you couldn't be fair and impartial? And she says, yes. She had a person close to her was murdered. The court gets her to acknowledge. She goes, well, she acknowledges that that case has nothing to do with this particular defendant. And then when asked directly, can you judge Mr. Wesley's case based on the evidence and the law? She says, yes, sir. She's then subsequently asked by counsel whether she can be sure that she would set aside that experience and decide just on the facts and the law, or would she still remember it? And this is either a compound question, which is discouraged because it leads to ambiguous answers, or it's not a compound question, and she was perfectly reasonable in interpreting it to mean set aside or still remember. If it's not compound, then set aside is the opposite of still remember. Would you not remember it, or would you still remember it? And she gave the best answer she could. She said, well, I'd try to listen. You know, I can't be sure, and it's entirely understandable why she couldn't be sure. That's not a very clear question. And it's important to remember that jurors are not prepped for questioning the way that witnesses are. They come in out of the outside world, and they're asked questions, and they're in a solemn and relatively formal setting that they're not used to, and they do their best. And their best is not always responsive, and it's not always consistent. And it's the job of the trial court to determine which answers were given with the greatest degree of comprehension, the greatest degree of sincerity, and a lot of that depends on factors that cannot be captured in the record, demeanor, indications of candor, indications of comprehension. A couple of other good examples in this case, Vardir, is the trial court in questioning the jurors closed up with a sort of catch-all. Is there anything else, is there any reason that would, anything else that would give you reason to believe that you couldn't be fair and impartial? In response to that question, is there anything that would give you reason to believe you couldn't be fair and impartial? One juror said that, well, I can't sit for very long. I get antsy if I sit too long. The judge said he had the same problem. And so there we have an unrehabilitated juror who just said that she could not be fair and impartial because of her scoliosis. She didn't say she couldn't be fair. She said she gets antsy. Well, it was in response, the court said, is there any reason that would give you cause? And she said, well, here's this reason. Another juror in response to that question said that she was her mother's caretaker and that she needed to be home. Now, that clearly is not her saying that she's more likely to find the defendant guilty. It's just jurors are doing their best. They're trying to make sure they provide the court with every possible useful piece of information that the court could need. And they don't have any training. They're not, I mean, attorneys are trained to listen carefully to the question and answer the question that's asked. And we still fail with some regularity. So it is not unreasonable and not uncommon for lay people to give ambiguous and inconsistent responses. Schneider, one of my biggest concerns in this case has to do with the performance prong. Ordinarily, this is the kind of decision where courts are extremely deferential to counsel. But given the way this case comes to us with an affidavit from Mr. Wesley saying that his lawyer told him that he would strike Keisha, it seems to me it's pretty difficult for us to go ahead and say that this is sufficient performance, adequate performance established on this record. Well, regardless of whether the performance is adequate, it still would not surpass the point. Did anybody talk to the lawyer involved, or was he ever? There wasn't any further conversation with the lawyer as to why he did or didn't do anything in particular. So the lawyer who was involved in the beginning ceased to be a part of this proceeding altogether? That's correct. He's still alive. I have confirmed that. He's still out there. But we haven't had any further input as to why he did or didn't do anything in particular. Do you know whether he could tell who was going to replace this juror if she was struck? I believe that, well, there had been a couple jurors who were struck earlier. The juror who said that she could not be impartial because she takes care of her mother, she was excused sua sponte by the court. And if I remember correctly, the court just asked people to slide down one, and the next person from the pool hopped in, I believe. The question is whether the lawyers know who that next person is going to be. Well, so the lawyer would see them. I don't know if they knew which person that questionnaire applied to. So regardless of whether performance was deficient, there's still the 2254 bar if a petitioner can't meet prejudice, which, as we explained, he can't. But there's also an explanation for counsel's performance. The state appellate court simply said that the petitioner failed to bear his burden, and it is his burden, to demonstrate that counsel's performance was deficient. And we don't have a silence in the record. We don't know why he did anything in particular. But the presumption is that it was a strategic decision. The presumption is not that it was out of neglect or incompetence. And so when you have that presumption, the question then is, is there any reasonable explanation for why counsel might do this? And the explanation is apparent, or an explanation is called to mind, from the argument on his motion to excuse Keisha A. for cause. He said, Your Honor, we move to excuse her for cause because she said that she couldn't be impartial. She wouldn't be able to set aside that experience. And the prosecution said, Your Honor, I don't ñ and you have to remember now, neither party had any transcripts of the proceedings at this point. This is all in a single day. So they're basing their motions and arguments on their recollection of the statements from the jurors. And the prosecutor said, Your Honor, I don't want to misquote counsel, but if I remember correctly, he didn't just ask, would you be able to set that aside? He asked, will you be able to forget it? And, of course, we don't ask jurors to leave their life experience and common sense at the door. And the judge said, You know, she indicated that she could be fair and impartial. I'm going to deny the motion. Then there was some discussion off the record, and then counsel comes back to announce the defense's exercise of peremptory challenges and says we're going to use one against a juror who is not Keisha A, and that's all we're going to use. That's all we're going to use suggests that he's thought about are we going to use any others. And the reason that he might have elected not to use one against Keisha A is that he may have, all things being considered, thought that she would, I see that my time's up. Finish this. He may have thought, you know, all things being considered, based on her demeanor, the way she was answering questions, her alertness, this is a juror that I would want on our panel. But she gave this answer that I recall as indicating bias. I can't in good conscience leave her on the jury if she was biased, notwithstanding my gut reaction. The prosecutor reminds him your question was not as clear as you thought it was. He realizes my initial impression of her as bias was incorrect, and so all things are again equal, and I want her on the jury. Thank you, Mr. Schneider. Thank you. Mr. Van Dam, rebuttal. Thank you, Your Honor. I'll be brief. Respondent's argument demonstrates that Mr. Wesley is still waiting for a reasonable explanation for his lawyer's failure to use a peremptory strike against Keisha A, especially in light of, as Judge Hamilton points out, his affidavit, which demonstrates that he asked his lawyer to strike her, to use a free peremptory strike, and he failed to do so. Is it reasonable to ask, before the courts get all fired up about this, to ask him to contact the lawyer to find out what he has to say? Well, Mr. Wesley is incarcerated. I know that, but he can write letters and he has family. He did submit affidavits with, in addition to his own, with his post-conviction petition. There was not one from counsel. Our argument is, in a hearing, he could elicit that sort of testimony. But as Judge Bower points out, there are still no facts from that lawyer. We still don't know what he said. We don't know why there was silence in the record. Wouldn't it be intelligent to find out? Pardon me, Judge? Wouldn't it be intelligent to find out, to inquire? It would be intelligent to inquire. And our contention is in the hearing. I've had cases where, in my personal experience, where somebody kept a juror that I would have thrown out the window and I found no explanation for it until I talked to the attorney. There can be, but I, like you, I'm trying to think of what brilliant one would come here and nothing comes to mind. But Frank Easterbrook sat on a jury in the Civic Center. Nobody threw him off, and that, too, kind of jarred me. Right. And if I may just finish my thought. We're asking the Court to grant the writ because there is no explanation on the record that we have for why he would have done that, and we contend that the juror's statements show. You're just asking for sending back Donald's directions to give him a new trial. Well, we'd like to send it back for a new trial, yes, Your Honor, to the Illinois courts. All right. Thank you very much. Thank you, Counsel. Mr. Van Dam, we thank you and your firm for the services that you've provided to the Court and to your client in this case, and we, of course, thank the helpful work of the state lawyers as well. The case will be taken under advisory. The case has been at this many, many years.